# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CR415-196 |
| TIMOTHY LEWIS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Timothy Lewis, charged with sex trafficking of minors, seeks to suppress evidence found in his vehicle pursuant to a search warrant issued by this Court. Doc. 79. His motion is without merit and should be denied.

## I. THE WARRANT

On October 30, 2015, a Federal Bureau of Investigation (FBI) special agent applied for a warrant to search a tan SUV (a 2004 GMC Yukon XL). Doc. 1. The electronic devices and other evidence seized pursuant to that warrant constitute part of the Government's evidence in this prosecution. Lewis contends the warrant lacked probable cause and was overbroad. Doc. 79. "Because these items are the fruits of an illegal search," he believes, "the Court should order that they be suppressed and be inadmissible in [his] upcoming trial." *Id.* at 2.

In support of his motion, Lewis challenges the credibility of "various runaway minors" interviewed in support of the warrant's application, asserting that they gave "conflicting stories" as to whether they were recruited by defendant to engage in commercial sex acts. He then directs the Court to "a mere cursory examination" of the search warrant application attachments to demonstrate the warrant was overbroad. *Id.* at 3. At the hearing on his motion, however, the defense was unable to cite a single, material inconsistency in the girls' stories. Nor was the defense able to point the Court to any one of 14 categories of items listed in the warrant that was either irrelevant to the sex trafficking business under investigation or so vague that a searching officer would be left to his own discretion as to whether it was covered by the warrant.

## II. PROBABLE CAUSE

Defendant contends that the warrant lacked probable cause. Doc. 79. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. Brundidge*, 170 F.3d

2

1350, 1352 (11th Cir. 1999). "Probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts" and is based on the "totality of the circumstances test." *Grubbs*, 547 U.S. at 95 (internal citations and punctuation omitted); *Brundidge*, 170 F.3d at 1352. These probabilities need not be technical, but "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994); *Gates*, 462 U.S. at 236 (warrants should be interpreted in a "commonsense" manner); *Brinegar v. United States*, 338 U.S. 160, 176 (1949). And these probabilities need not come from direct observation but may be inferred from the particular circumstances at issue. *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990).

In her 9-page affidavit offered in support of the search warrant application, Special Agent Kathia Jackson represented that during her ten years with the FBI she had "worked on many cases involving sex trafficking of children." Doc. 1 at 1. As a result of her training and experience, she knew that "[i]t is common for persons who engage in sex trafficking of children to transport the children to and from the

3

commercial sex acts in a vehicle." *Id.* at 2.

Agent Jackson then recounted the facts and circumstances of the FBI's investigation of Lewis, including interviews with several minors who led investigators to a hotel where he was staying.[1] *Id.* at 2-5. After SJ identified Lewis' SUV at the hotel, agents determined that the vehicle was registered to Timothy Lewis and observed an electronic tablet in plain view in the center console. *Id.* at 5. Agents then spotted Lewis peering from a hotel room window directly in front of the SUV. *Id.* When he opened the door in response to their request, the agents immediately detected the odor of marijuana and discovered two minor females, BW and KW. *Id.* at 5-6. Though he refused to identify himself, Lewis was positively identified based on an image retrieved from the Department of Motor Vehicles. *Id.* at 6.

BW and KW explained that Lewis would use his tablet and cellular telephone to receive images the minors had taken of themselves

---

[1] The FBI had initiated an investigation of two 13-year-old girls, MW and JD, who had run away from "a facility" in Statesboro, Georgia. Doc. 1 at 3. After JD was caught shoplifting in Savannah, she reported that she had had sex with a 26-year-old male in exchange for food and shelter. *Id.* JD reported that MW had come to Savannah with her, and a search of MW's Facebook page confirmed that she was in the Savannah area. *Id.* A Facebook photo depicted MW at a Savannah apartment complex. That information led the agents to SJ, who admitted to being MW's friend and who described the male who was with MW, the hotel where they were staying, and the vehicle the male was driving. *Id.* at 4-5.

4

and post them on a commercial sex website. *Id.* at 6-7. Both girls explained that they had to pay Lewis for each commercial sex posting. *Id.* BW, who was pregnant by Lewis, had taken the "morning after pill" and had stuffed makeup sponges into her vagina to stanch the flow of blood so that she could continue to engage in commercial sex acts. *Id.* She stated that Lewis was physically abusive and forced her to have sex for money. *Id.* at 6.

Review of MW's Facebook page revealed photographs of her inside what appeared to be Lewis' SUV, as well as a photograph of her holding a firearm. BW told the agents that the firearm belonged to Lewis. *Id.* at 7-8. No such weapon was recovered from the hotel room upon Lewis' arrest. *Id.* at 8. BW also stated that Lewis transported her in the tan SUV for the purpose of commercial sex acts. *Id.* Based on this information and her experience, Agent Jackson concluded that she had probable cause to apply for a search warrant. *Id.*

Lewis argues that the information set forth in the search warrant affidavit failed to demonstrate that it was "more likely than not" that a crime had been committed. Doc. 79 at 2. This misstates the probable cause standard. An assessment of probable cause involves the

5

"practical, nontechnical" judgments of lay persons using their ordinary common sense. *Texas v. Brown*, 460 U.S. 730, 742 (1983). An officer's belief that contraband or criminal evidence is concealed in a particular place "does not demand any showing that such a belief is correct or more likely true than false." *Id.* Such "[f]inely tuned standards" as "preponderance of the evidence" -- while useful in formal trials -- "have no place in the magistrate's decision" regarding probable cause. *Gates*, 462 U.S. at 235 (noting that not even "a prima facie showing . . . of criminal activity is the standard of probable cause"); *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable cause standard is incapable of precise definition or quantification into percentages . . . ."). Probable cause requires only that the available facts permit a person of "reasonable caution" to believe that evidence of a crime "*may*" be located in the place sought to be searched. *Brown*, 460 U.S. at 742 (emphasis added).

Lewis further asserts that the information furnished by the minors was so "questionable" as to be an unreliable basis for a probable cause finding. Doc. 79 at 2. But he does not support this assertion with any reasoned argument. It is true (as detailed in the affidavit) that one

6

of the minors (JD) was caught shoplifting in Savannah, doc. 1-3 at 3, that another (SJ) furnished the wrong room number at the Gateway Hotel, and that the hotel room where defendant and two of the girls (BW and KW) were located smelled of marijuana.[2] But when the facts are viewed in their *totality* -- including the girls' consistent (*not* inconsistent) stories that they had been conscripted into the sex trade by Lewis, stories bolstered by the corroborating evidence gathered by the investigators -- the probable cause basis for the warrant cannot seriously be questioned.

## III. PARTICULARITY

Defendant argues that the warrant authorized the agents to rummage through his vehicle in search of overly broad categories of information, "most of which would have required the discretion of the

---

[2] JD, a 13-year-old runaway, confided to the agents that she had traded sex with an adult male for food and shelter. That this young girl -- deprived of any family or public support -- had also been caught shoplifting was not atypical behavior for someone whose life had taken such a sad and dark turn. Nor was SJ's credibility much compromised by the fact that she misidentified the number of the room where MW was staying with defendant. After all, she led the agents to the right hotel and gave an accurate description of the defendant's vehicle, information which led to his immediate capture, the discovery of two additional minor females, and the eventual location of MW herself. Finally, while the odor of marijuana in the room might justify the inference that the two young girls had recently participated in the consumption of that substance, the detailed (and consistent) information furnished by these girls belies any suggestion that they were so mentally incapacitated as to be untrustworthy witnesses.

7

officer executing the warrant in order to determine if they could be seized." Doc. 79 at 3. The warrant, he contends, runs afoul of the Fourth Amendment's particularity requirement, which prevents "general, exploratory rummaging in a person's belongings." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982) (cites omitted). A warrant that fails to sufficiently particularize the place or things to be seized is unconstitutionally overbroad and the resulting general search is unconstitutional. *United States v. Travers*, 233 F.3d 1327, 1329-30 (11th Cir. 2000); *United States v. Mitchell*, 503 F. App'x 751, 754 (11th Cir. 2013). A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things to be seized. *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011). Technical perfection in the description is not required, but rather the Court should apply a practical margin of flexibility. *Id.*

Lewis' vagueness argument is without merit. The warrant application particularly described the evidentiary items that were believed to be in the gold SUV: tablets, cellular telephones, United States currency, firearms, condoms, women's clothing, lists of customer information, documentation of ownership and use of the gold SUV,

8

documentation associated with renting hotel rooms, and information regarding the individual minor children identified in the warrant affidavit. Docs. 1-1 at 4, 1-2 at 4.

Aside from the vehicle's registration, which is indisputably relevant to proving Lewis owned the vehicle (it also was independently verified by a DMV registration search), these are classes of items common to sex trafficking and appropriately tailored to the scope of the FBI suspicion that the SUV was being used for transporting minors for commercial sex acts. The warrant application's description of items to be seized was "as specific as the circumstances and the nature of the activity under investigation permit[ed]." *Wuagneux*, 683 F.2d at 1349. Law enforcement officers executing the warrant were not unguided and free to rummage through all of defendant's property. Instead, the warrant narrowed the agents' search to items related to the alleged crime -- sex trafficking of minors. Thus, this argument also fails.

## IV. CONCLUSION

The warrant application provided a wealth of information that established probable cause, and the warrant was sufficiently particularized to enable searching officers to reasonably ascertain and

9

identify the things authorized to be seized. Lewis' motion to suppress evidence gathered from the valid search warrant should be **DENIED**. Doc. 79.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x

542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this  21st  day of November, 2016.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA